CRAIG W. RICHARDS
ATTORNEY GENERAL
Jessica Moats Alloway (Alaska Bar No. 1205045)
Assistant Attorney General
Department of Law
1031 West 4th Avenue, Suite 200
Anchorage, AK  99501
Telephone: (907) 269-5232
Facsimile: (907) 279-2834
Email: jessie.alloway@alaska.gov
Attorney for the State of Alaska

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA,<br>   Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>   Defendant. | CIVIL ACTION NO: 3:15-cv-00226-RRB<br><br>**COMPLAINT TO QUIET TITLE** |

## INTRODUCTION

1. The State of Alaska ("State"), through the office of the Attorney General, brings this action to quiet title to state-owned submerged land underlying the non-tidal portion of the Stikine River.

2. The Stikine River is a navigable-in-fact river within the boundaries of the State of Alaska, and the State obtained ownership to its submerged lands on the date of statehood pursuant to the Equal Footing Doctrine, the Submerged Lands Act of 1953, and the Alaska Statehood Act.

3. The United States previously disclaimed any interest to the marine submerged lands (lands underlying tidally influenced waterways) within the exterior boundaries of the Tongass National Forest, as those boundaries existed at statehood. *Alaska v. United States*, 126 S.Ct. 1014 (2006) ("*Glacier Bay Decree*").

4. The State brings this action because defendant United States claims ownership over the submerged land underlying the non-tidal portion of the Stikine River and refused to act on the State's application for a recordable disclaimer of interest to these submerged lands. These actions create a cloud on the State's title and causes uncertainty regarding the ownership, use, management, and control of the submerged lands.

## JURISDICTION AND VENUE

5. The State brings this action under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, which authorizes a federal district court to adjudicate disputes over the title to real property in which the United States claims an interest. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1346(f) & 2409a.

6. This Court has jurisdiction over this action because the QTA waives sovereign immunity of the Federal government to resolve disputes over the title to real property in which the United States claims an interest.

7. The State satisfied the QTA's 180-day notice of intent to sue requirement. *See* 28 U.S.C. § 2409a(m). By letter dated August 27, 1992, the Office of the Attorney General for the State of Alaska provided notice of its intent to file suit with regard to the ownership of the submerged lands at issue in this case. A copy of this Notice of Intent is

included as Exhibit 1. The State re-noticed its intent to file suit with regard to the ownership of these submerged lands on December 27, 2013. A copy of this letter is included as Exhibit 2.

8. This is an action brought by a state and is timely under 28 U.S.C. § 2409a(g).

9. Title 28, United States Code, Section 1346(f) provides that federal district courts have exclusive original jurisdiction over civil actions arising under the QTA.

10. Venue is proper in this Court under 28 U.S.C. § 1391(e) because the lands at issue in this lawsuit are located within the District of Alaska.

11. A case or controversy has arisen over the State's ownership of the submerged lands described herein and its jurisdiction to regulate and control this land.

## PARTIES

12. The Plaintiff State of Alaska is a sovereign state, with a sovereign interest in the management and conservation of the beds of navigable rivers and other navigable waters and submerged lands to which it has title. In bringing this lawsuit, the State of Alaska seeks to confirm its right to manage its own lands, and to remediate and prevent the attendant harm of being deprived of this right.

13. Defendant United States of America is a sovereign nation and claims an interest in the submerged lands underlying the non-tidal portion of the Stikine River, as more fully set forth below.

## DESCRIPTION OF THE STIKINE RIVER

14. The Stikine River originates in British Columbia, Canada, and is approximately 379 miles long. Only the lowermost 27 miles of the river are located in Alaska.

15. Within Alaska, the Stikine River flows from the Alaska/Canada International Border in T. 60 S., R. 86 E., Copper River Meridian, Alaska, downstream to all points of confluence at its mouth in the Eastern Passage, Dry Strait and Frederick Sound, within T. 60 S., R. 82 E.; T. 61 S., R. 83 E. and T. 61 S., R. 84 E.; and T. 62 S., R. 82, 83 and 84 E., Copper River Meridian, Alaska. A map highlighting the river with the townships and ranges through which the river flows is attached as Exhibit 3. Within this Complaint, reference to the Stikine River includes only that portion of the Stikine River located in Alaska, not including where the river crosses the International Boundary.

16. The Stikine River has been used almost continuously as a highway of commerce since before the Purchase of Alaska in 1867.

17. Both Great Britain and the United States recognized the river's importance as a highway in the Washington Treaty of May 8, 1871. Article XXVI of the treaty stipulated: "The navigation of the rivers Yukon, Porcupine, and Stikine, ascending and descending, from, to, and into the sea, shall forever remain free and open for the purposes of commerce to the subjects of her Britannic Majesty and to the citizens of the United States, subject to any laws and regulations of either country within its own territory, not inconsistent with such privilege of free navigation."

18. The Stikine River is located within the Tongass National Forest.

19. The Tongass National Forest was created via presidential proclamations made pursuant to the Creative Act of 1891[1] and the Organic Administration Act of June 4, 1897.[2]

20. In 1902, Proclamation 37 "set [] apart and reserve[d]" the "public lands" described as certain lands for the Alexander Archipelago Forest Reserve.[3] A September 10, 1907 proclamation reserved "public lands" that were "in part covered with timber," identified as "the tracts of land . . . shown as the Tongass National Forest on the [accompanying] diagram . . . ." The tracts of land were "reserved from settlement, entry, or sale . . . ."[4] Executive Order 908, dated July 2, 1908, consolidated the Alexander Archipelago Forest Reserve and the Tongass National Forest under the Tongass name.[5] On February 16, 1909, Proclamation 846 expanded the Tongass National Forest to include the Stikine River watershed and most of the rest of Southeast Alaska, including lands near Yakutat.[6]

21. The reservations or withdrawals described in Paragraph 20 are the only pre-statehood reservations or withdrawals potentially applicable to the submerged lands underlying the Stikine River.

---

[1] Creative Act of Mar. 3, 1891, § 24, 26 Stat. 1095, 1103.

[2] Organic Administration Act of June 4, 1897, 30 Stat. 11, 35.

[3] Proclamation No. 37, 32 Stat. 2025–26 (Aug. 20, 1902).

[4] Proclamation, 35 Stat. 2152 (Sep. 10, 1907).

[5] Exec. Order 908 (July 2, 1908).

[6] Proclamation 846, 35 Stat. 2226 (Feb. 16, 1909).

*Alaska v. United States*
Complaint

Page 5 of 12
Case 3:15-cv-00226-RRB   Document 1   Filed 11/20/15   Page 5 of 12

22. In response to a separate quiet title action, the United States previously disclaimed interest pursuant to 28 U.S.C. § 2409a(e) to "any real property interest in the marine submerged lands within the exterior boundaries of the Tongass National Forest, as those boundaries existed on the date of Alaska Statehood." *Glacier Bay Decree*, 546 U.S. 413 (2006). Pursuant to this disclaimer, the United States disclaimed any interest it may have had in the submerged lands underlying the portion of the Stikine River that is tidally influenced (i.e., marine submerged lands).

23. None of the exceptions listed in that disclaimer apply to any of the submerged lands underlying the Stikine River.

24. The State of Alaska owns the submerged lands underlying the marine or tidally influenced portion of the Stikine River. This includes all lands permanently or periodically covered by tidal waters up to but not above the line of mean high tide.

25. Tidal influence extends up the Stikine River from its mouth at least 17.4 miles. In the 2012 Edition of the *United States Coast Pilot, Pacific Coast Alaska: Dixon Entrance to Cape Spencer*, the U.S. Department of Commerce National Oceanic and Atmospheric Administration found tidal effects at least a distance of 17.4 miles above the mouth of the Stikine River. The U.S. Army Corps of Engineers reported tidal influence 20 miles from the mouth of the Stikine.

26. This action is to quiet title to the submerged and submersible land up to and including the ordinary high water lines of the right and left banks of the portion of the Stikine River that is not tidally influenced.

## ALASKA'S TITLE TO ITS SUBMERGED LANDS

27. The "equal footing doctrine" guarantees to newly-admitted states the same rights enjoyed by the original thirteen states and other previously-admitted states. *Utah v. United States*, 482 U.S. 193, 196 (1987); *Alaska v. Ahtna, Inc.*, 891 F.2d 1401, 1404 (9th Cir. 1989). This includes title ownership to lands underlying navigable and tidally influenced waters. *Utah*, 482 U.S. at 196.

28. In addition to the "equal footing doctrine," the Submerged Lands Act of 1953 vested in the states "title to and ownership of lands beneath navigable waters within the boundaries of respective States." 43 U.S.C. § 1311(a) (2012).[7] Congress expressly applied the Submerged Lands Act of 1953 to Alaska in the Alaska Statehood Act. § 6(m) of the Alaska Statehood Act, 48 U.S.C. note prec. § 21.

---

[7] "Lands beneath navigable waters" is defined as:

(1) all lands within the boundaries of each of the respective States which are covered by nontidal waters that were navigable under the laws of the United States at the time such State became a member of the Union, or acquired sovereignty over such lands and waters thereafter, up to the ordinary high water mark as heretofore or hereafter modified by accretion, erosion, and reliction;

(2) all lands permanently or periodically covered by tidal waters up to but not above the line of mean high tide and seaward to a line three geographical miles distant from the coast line of each such State and to the boundary line of each such State where in any case such boundary as it existed at the time such State became a member of the Union, or as heretofore approve by Congress, extends seaward (or into the Gulf of Mexico) beyond three geographical miles, . . .

43 U.S.C. § 1301(a).

*Alaska v. United States*
Complaint                                                                 Page 7 of 12
Case 3:15-cv-00226-RRB   Document 1   Filed 11/20/15   Page 7 of 12

29. Moreover, Congress expressly applied the "equal footing doctrine" to the Territory of Alaska through the Alaska Right of Way Act of 1898, 30 Stat. 409, codified at 43 U.S.C. §§ 942-1 to 942-9.

30. As a result of the above-described statutes and constitutional doctrines, the State generally owns and manages the submerged lands and the resources located within or on such lands.

31. Alaska's title to its submerged lands vested at statehood on January 3, 1959.

## FEDERAL AGENCY DETERMINATIONS OF OWNERSHIP

32. In February 2005, the Alaska Department of Natural Resources ("DNR"), on behalf of the State, filed an application for a recordable disclaimer of interest ("RDI") to the bed of the Stikine River pursuant to § 315 of the Federal Land Policy and Management Act and the implementing regulations at 43 C.F.R. § 1864. The State amended its application in June 2005.

33. In August 2007, the Alaska State office of the Bureau of Land Management ("BLM") published the Federal Register notice of its Draft Determination. BLM found that the Stikine River was navigable-in-fact to the Canadian border at the time of statehood and concluded that "the lands underlying the Stikine River were not reserved at the time of statehood. Therefore, title to the lands underlying the river vested in the State of Alaska at the time of statehood."

34. BLM determined that title to a 60-foot-wide reservation marking the United States-Canadian International Boundary had not passed to the State. The State does not claim title to the submerged lands within the federal withdrawal for the Canadian border.

35. In October 2007, the United States Forest Service ("Forest Service") objected to BLM's Draft Determination, asserting that a pre-statehood withdrawal defeated the State's title to the lands underlying the Stikine. In doing so, the Forest Service asserted that the submerged lands were reserved to the United States at the time of statehood and that ownership of the submerged lands is "important to achieve the purposes for which the Tongass was created."

36. The Forest Service did not contest BLM's finding that the Stikine River is navigable-in-fact.

37. BLM denied the State's application for an RDI on April 2, 2010.

38. In denying the State's application, BLM concluded that the Forest Service raised a valid objection to the State's application because "[u]ncertainty of the effects of a prestatehood reservation on submerged land title is one example of what may constitute a valid objection." The Forest Service's objection asserted the subject lands "were reserved to the United States."

39. In denying the State's application, BLM did not retract or amend its determination that the Stikine, including the interconnected named and unnamed waterways that are an integral part of the river, was navigable–in–fact at statehood.

40. The State appealed BLM's denial of its RDI application to the Interior Board of Land Appeals ("IBLA"), arguing that BLM failed to follow its regulations and

*Alaska v. United States*
Complaint
Page 9 of 12
Case 3:15-cv-00226-RRB Document 1 Filed 11/20/15 Page 9 of 12

perform a meaningful analysis of either the State's claim or the Forest Service's objection.

41. During the administrative appeal to the IBLA, the Forest Service continued to argue that the United States owns the submerged lands underlying the Stikine River and that these lands were reserved and included within the boundary of the Tongass National Forest.

42. In December 2010, the IBLA set aside and remanded BLM's decision rejecting the State's application for an RDI. It determined that BLM "must evaluate and weigh the conflicting evidence and precedent and explain the basis for its determination that, despite the contravening evidence, the agency's objection is sustainable."

43. In April 2011, IBLA denied BLM's and the Forest Service's motions for reconsideration.

44. Since IBLA's remand, BLM has not acted on the State's application.

45. BLM's failure to act on the State's RDI application—and the Forest Service's claim of ownership—created a cloud on the State's title and causes uncertainty regarding the ownership, use, management, and control of the submerged lands.

## OWNERSHIP OF THE SUBMERGED LANDS UNDERLYING THE STIKINE RIVER

46. The Stikine River is navigable-in-fact as it was used or susceptible of being used in its ordinary condition as a highway for commerce over which trade and travel may be conducted in the customary modes of trade and travel.

47. There is no pre-statehood withdrawal that defeated Alaska's title to the submerged land underlying the non-tidally influenced portion of the Stikine River.

## CLAIM FOR RELIEF

**(Quiet Title for the State against United States pursuant to 28 U.S.C. § 2904a)**

48. Plaintiff realleges the allegations contained in Paragraphs 1–47 above.

49. Pursuant to 28 U.S.C. § 2409a, the United States is subject to suit to quiet title to real property in which both the State and the United States claim an interest.

50. The Stikine River was navigable-in-fact at the time of statehood, and none of the pre-statehood withdrawals in effect for this area defeated the State's interest to the submerged land. Therefore title automatically transferred to the State of Alaska pursuant to the equal footing doctrine, the Submerged Lands Act of 1953, and the Alaska Statehood Act.

51. The State is entitled to an order of this Court quieting title to the submerged land underlying the non-tidally influenced portion of the Stikine River.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff State of Alaska prays as follows:

52. That this Court enter judgment declaring that the non-tidally influenced portion of the Stikine River is navigable-in-fact and that there were no pre-statehood withdrawals in effect at the time of statehood that defeated the State's interest to the submerged land underlying the non-tidal portion of the Stikine River. As a result, title to the bed of the non-tidally influenced portion of the Stikine River is in the State of Alaska, and that the United States has no title thereto or interest therein since January 3, 1959.

53. That the Plaintiff State of Alaska be awarded costs and attorney's fees.

54. For such further and other relief as the Court may deem just and proper.

DATED: November 19, 2015, at Anchorage, Alaska.

        CRAIG W. RICHARDS
        ATTORNEY GENERAL

By: /s/ Jessica Moats Alloway
    Jessica Moats Alloway
    Alaska Bar No. 1205045
    Assistant Attorney General
    Department of Law
    1031 West 4th Avenue, Suite 200
    Anchorage, AK 99501
    Telephone: (907) 269-5232
    Facsimile: (907) 279-2834
    Email: jessie.alloway@alaska.gov

*Alaska v. United States*
Complaint     Page 12 of 12
Case 3:15-cv-00226-RRB Document 1 Filed 11/20/15 Page 12 of 12